(February 22, 1896.)

# IN RE DOWLING.

[43 Pac. 871.]

JUDGE—HABEAS CORPUS—ORDER FOR CARE AND CUSTODY DURING
PENDENCY OF PROCEEDING—SIGNATURE OF CLERK AND SEAL OF
COURT—CONTEMPT.—The district judge at chambers has all the
powers of a court in *habeas corpus* proceedings. Under the pro-
visions of section 8361 of the Revised Statutes the judge may is-
sue an order for the temporary care and custody of the person
alleged to be illegally restrained of his liberty, to continue until
the hearing of the application for the writ of *habeas corpus*. Such
order need not be issued by the clerk under the seal of the court.
The signature of the judge is sufficient. The statutes in regard to
the writ of *habeas corpus* must be liberally construed with a view
to effect their object and promote justice.

(Syllabus by the court.)

APPLICATION for writ of *habeas corpus*. An original
proceeding in supreme court.

No brief filed.

SULLIVAN, J.—This is an application for a writ of *habeas
corpus*. The facts are substantially as follows: Mrs. Della
Dowling made application to Honorable D. W. Standrod, judge
of the fifth judicial district of Idaho, for a writ of *habeas cor-
pus* to procure the custody of her two year old infant daughter,
Eva Estella Dowling. She alleges in her petition for said writ
that said child is the daughter and only child of the petitioner;
that from the birth of said child to the twenty-eighth day of
December, 1895, said infant had not been separated from the
petitioner; that the mother's care was indispensably necessary
for the welfare of said infant, and that the separation from its
mother greatly endangered its health; that the petitioner was
married to James J. Dowling, the father of said infant, at Sal-
mon City, Idaho, on the fifth day of October, 1892, and from
that time until the twenty-fourth day of December, 1895, she
lived and cohabited with said James J. Dowling; that on the
last-mentioned date she was obliged to take said child, and

leave her said husband, and go and reside with her mother, in said Salmon City, because of the cruel and barbarous treatment of her said husband; that he was abusive, insulting, and violent. in his deportment toward the petitioner, and applied opprobrious epithets to her, charging her with infidelity and unfaithfulness, and threatened her life and that of said child; that her sufferings were so great while she remained in his society and under his control that her condition became intolerable and her life a burden, and she was compelled and forced thereby to withdraw from her said husband's home on the twenty-fourth day of December, 1895; that, by reason of such conduct on the part of her said husband, she would have, long prior to said date, separated from him, but was restrained, and submitted to all his cruelties because of womanly, wifely, and motherly reluctance to involve her said family in a public exposure of the distressing life she had led, and the abuse she had endured; that since leaving her husband she has been residing with her mother, and under her protection, apart from her said husband, in said Salmon City; that on the twenty-sixth day of December, 1895, her said husband came to the home of her said mother, Mrs. Melvina J. Nashold, and by force and violence, and against the wish, and in spite of the express prohibition, of the petitioner, carried away said infant, and now wrongfully and unlawfully restrains and keeps her in a house situated in the suburbs of said Salmon City; that said house is occupied by said James J. Dowling and one William Neal, a saloon keeper; that those two persons are the only occupants of said house, and in care of said infant; that said Neal is charged with a crime, and now under bail; that, during the absence of said Dowling from said house, said Neal has said child in his sole care and custody; that said Dowling is under bonds to keep the peace, and during the trial of that matter the said infant was kept in the town jail of Salmon City; that said infant is in delicate health, subject to fits of croup, and that its general welfare, its health, and its life depend upon the immediate care of a mother, "and that your petitioner is able to provide a suitable home for said child, to administer to its wants, and is willing to devote her time to its welfare"; .that said James J.

Dowling has threatened to kill said infant, and has threatened to remove said child from Lemhi county, and that the petitioner believes said child may suffer irreparable injury before compliance with a writ of *habeas corpus* can be enforced; that, by reason of sickness and infirmity incident to tender years of infancy, the said child could not be taken on a distant journey, in the winter season, without great danger. The petitioner then states facts tending to show illegal detention and confinement of said infant, and asks that the child be delivered to the petitioner.

On presentation of said petition to the Honorable D. W. Standrod, judge of the fifth judicial district, he made an order in writing setting forth substantially the facts contained in said petition, and directed that, upon the service of the same on said James J. Dowling, he deliver said child into the custody of the sheriff of said Lemhi county, and that said sheriff deliver said child into the custody of the petitioner. And it was further ordered that, upon the failure of said Dowling to deliver the said child to said sheriff, the sheriff was directed to immediately take said child from the custody of said Dowling, and deliver it to its mother, the petitioner, to be by her kept and maintained until the hearing of the said petition, which hearing was fixed for January 21, 1896. Said order was signed by the district judge, but not issued by the clerk under the seal of the court. Said order was placed in the hands of the sheriff of Lemhi county for service on the thirteenth day of January, 1896; and thereupon the said sheriff proceeded to and did serve the same upon the said James J. Dowling, and then and there demanded the possession of said child, which was refused by said Dowling. Thereafter said Dowling consulted his attorney, and after so doing served the following written notice on the sheriff:

"To John Miller, Sheriff of Lemhi County, Idaho.

"Dear Sir: I hereby notify you that I fail and refuse to surrender to you the custody of my infant child, Eva Estella Dowling, under the order of the Hon. D. W. Standrod, judge, dated at chambers at Pocatello, Idaho, on January 11, 1896. I also notify you that the said order is void, for the reason that

the said judge at chambers has no jurisdiction or power to make said order, and for the further reason that the said order, which is, in effect, if anything, a process, is void for the reason that it is not issued in the name of the state of Idaho, nor in the name of the people of the state of Idaho, and for the further reason that it was not issued by the clerk of the court, under the seal of the court, as required by section 8370 of the Revised Statutes of Idaho. Said order is without authority; arbitrary, despotic; without warrant in law; made without the protestant being heard, or having a chance to be heard; was not made in any civil action then or now pending; and is in no sense a writ of *habeas corpus*, or authorized in a *habeas corpus* proceeding. I forbid you taking charge of my said child under said order, and warn you that if you do so, you will do so at your peril, and that I will hold you responsible for any consequences that may result, and for all damages that may come to me, by reason of such unwarranted seizure, should same be made by you. I act in this matter advisedly, declining to obey the said order because it is a nullity, and with all due respect for the laws of my country, which I am ready to obey; but I claim the natural and inherent right to protect my own lawful possession of my own child against unlawful seizure by any power, or under any order of any judge that is or may be made without authority of law.

"Jan. 14, 1896.             JAS. J. DOWLING."

Thereupon the sheriff failed and refused to execute said order by taking said child and delivering it to the petitioner. Thereafter the petitioner presented a supplemental petition to said district judge in said matter, setting forth numerous facts showing the failure of the sheriff to execute said order, and the failure and refusal of James J. Dowling to deliver said child as directed by said order. The judge thereupon issued an attachment against said Dowling, under which he was arrested and brought before said judge for contempt for disobeying said order. The defendant was represented by R. P. Quarles, Eden & Terrell, and Reeves, Esqs., his attorneys. A motion was made to quash said attachment, and submitted to the court. The judge thereupon asked counsel for the state if

they desired to offer any proof as to the whereabouts of the child in question, and they replied that they did not have any proof to offer, and that they had been unable to obtain any. The judge then directed the defendant to be sworn, so that he might be interrogated as to the whereabouts of said child, to which the defendant objected on the ground that he was not required to testify against himself. The judge thereupon found the defendant guilty of contempt, for refusing to obey the order of said judge directing him to deliver said child to the sheriff, and, further, that said child is secreted by said defendant, and that it is in his power to produce said child and to perform the said order; and it was ordered that said Dowling be imprisoned in the county jail of Bannock county until he performs the said order by delivering, or causing to be delivered, said child to the custody of the sheriff of Lemhi county, and the sheriff was directed to enforce this order or judgment.

The contention of defendant is that the order of January 11, 1896, issued under the signature of the judge, directing the defendant, Dowling, to deliver the custody of said child to the sheriff, is void, because not issued by the clerk under the seal of the court; that the same was issued without jurisdiction, power, or authority on the part of the judge; and that said order was not authorized by any law of this state, and for those reasons the defendant is not guilty of contempt for refusing to obey it. Counsel for defendant would indicate by his argument that the order in question was permanent, when such is not the case. The order was served on defendant on the thirteenth day of January, and the hearing to determine who should have possession and custody of the child was set for January 21st, following. The district judge, as contradistinguished from the court, may perform all acts required in proceedings under the provisions of the statute in regard to writs of *habeas corpus* as legally and effectually as the court itself.

1. We will consider the authority of the judge to make said order. Section 8361 of the Revised Statutes provides: "Until judgment is given on the return, the court or judge before whom any party may be brought on such writ, may commit

him to the custody of the sheriff of the county, or place him
in such care and under such custody as his age or circumstances
may require." I think this section was intended to provide
for such cases as the one at bar. An infant child, two years
of age, in poor health, is the subject of dispute. To take it
before the judge would require taking it a distance of seventy
miles, by stage, over a high range of mountains, and then some
two hundred and twenty-five miles by rail to Pocatello, Idaho,
in the most inclement season of the year. In such a case said
section 8361 authorizes the judge or court to look to the health
and welfare of the person whose liberty is involved, and does
not require that the body of such person shall be brought be-
fore the judge or court before the order therein provided for
can be legally made.

2. Is said order void because it was not issued by the clerk
of the court under the seal of the court? It is contended that
said order is a writ, warrant, or process, within the meaning
of these terms as used in the provisions of the chapter entitled
"Of Writs of *Habeas Corpus*," and that section 8370 of said
chapter requires that all writs, warrants, and process authorized
by the provisions of said chapter must be issued by the clerk
of the court under the seal thereof. We cannot concede this
contention. An order made under section 8361, for the tem-
porary care and custody of the person alleged to be illegally
restrained of his liberty, until the hearing and determination
of the application, does not necessarily need to be issued by the
clerk under the seal of the court. The order complained of
was passed upon by this court in *Re Miller* (decided at the
January, 1896, term), ante, p. 711, 43 Pac. 870, which case
was an application for a writ of prohibition. Mr. Justice Mor-
gan, speaking for the court, in that case, said of said order,
"The authority of the judge of the district court for the issu-
ance of this order found in section 3925 of the Revised Stat-
utes." And again, "It also appears that section 8361 of the
Revised Statutes would authorize the issuance of said order."
And further, "Under all the circumstances, the court thinks
that the judge of the district court is authorized to issue the
order that the child be taken to its mother until an applica-

tion for *habeas corpus* can be heard, which is set for the twenty-first day of January." We think said order did not require the signature of the clerk of said court and the seal thereof. The language of section 3875 of the Revised Statutes, which section is a general provision respecting courts of justice, provides: "The seal of the court need not be affixed to any proceeding therein, or document except (1) to a writ; (2) to the certificate of the probate of a will, or of the appointment of an executor, administrator or guardian; (3) to the authentication of a copy of a record or other proceeding of a court, or of an officer thereof, or of a copy of a document on file in the office of the clerk." This clearly indicates that such an order as the one in question does not require the seal of the court. The circumstances of this case are peculiar, and the provisions of the statute are broad enough to enable the judge to do justice between the parties.

The application for the writ shows that the defendant had, by force and violence, taken the child from its mother, and that he and one Neal, a saloon keeper, were the only persons caring for it, and shows such facts as we think fully warranted the court in making said order. After having obtained the possession of the infant by force and violence, the defendant retains possession of it by resistance to an order of the judge, and has secreted the child; and it is alleged that he has transported it beyond the jurisdiction of the judge, and thus seeks to evade having justice done in the matter, and claims that he is innocent of the crime of contempt. The proceedings in *habeas corpus* under the Revised Statutes are for the promotion of justice, and the provisions of those statutes, and all proceedings under them, must be liberally construed, with a view to effect their objects and promote justice. (See Rev. Stats., sec. 4.) The defendant, in his letter or notice to the sheriff, above set out in full, shows that his main objection to said order was "that the said judge at chambers had no jurisdiction or power to make said order, and for that reason it was void." He thus put himself in open defiance to the order of the judge, without appearing before him and testing the jurisdiction there, and, if not satisfied with the decision of the judge,

to, in a proper manner, have the same reviewed. The defense, at best, is but technical; but it seems that the delay gained by it was sufficient to enable the defendant to secrete the child, and transport it beyond the jurisdiction of the court. The conduct of the defendant clearly indicates that he was running a race with the court or judge, with the intent to defeat the ends of justice. Section 8236 of the Revised Statutes, which applies to the Penal Code, in which is found the chapter on "*habeas corpus*," provides as follows: "Neither a departure from the form or mode prescribed by this code in respect to any pleading or proceeding, nor any error or mistake therein, renders it invalid, unless it has actually prejudiced the defendant or tended to his prejudice in respect to a substantial right." Technical errors or defects should not be permitted to defeat justice in any case. His acts show that his whole intention was to defeat the action of the judge in said *habeas corpus* proceeding, provided the judgment should be against him. Such obstruction should not be tolerated by any court of justice or judge. The defendant was given the opportunity to purge himself of the contempt, but he refused so to do. He refused to inform the judge of the whereabouts of the child, thus showing that by his act in setting at defiance the order of the court, and subsequently secreting the child, he knowingly and willfully endeavored to thwart the lawful order of the judge, and thus committed the crime of contempt.

We have examined the authorities cited by counsel for defendant, and find many of them not in point, and those that are do not affect the question involved, as that question is controlled by the positive provisions of our statute.

As to the point that the writ of *habeas corpus* had not yet been issued, we will say that, as the defendant has been in continual contempt for refusing to obey said order, he will not be heard to complain of that fact until he purges himself of contempt, or until he is released therefrom by the judge of the fifth judicial district.

After a careful consideration of the law, and all facts presented by the application for the writ of *habeas corpus,* we are of the opinion that the writ ought not to issue, and the pro-

ceedings of the judge of the district court herein are hereby approved and confirmed. The writ is denied.

Morgan, C. J., and Huston, J., concur.